223 N.J. Super. 10 (1988)
537 A.2d 1311
CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
BLOCK 1183, LOTS 11 & 22; BLOCK 1184, LOTS 1 & 11; BLOCK 1185, LOT 14, MORE COMMONLY KNOWN AS 140-170 THOMAS STREET, ASSESSED TO MORTON SPRINGER & CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1988.
Decided February 5, 1988.
*11 Before Judges DREIER, BAIME and ASHBEY.
David H. Harris argued the cause for appellant (Bell, Adubato & Ligham, attorneys; David H. Harris, on the brief).
Joanne Y. Johnson, Assistant Corporation Counsel argued the cause for respondent (Glenn A. Grant, Corporation Counsel, attorney; Tonya M. Smith, Assistant Corporation Counsel, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
Defendant appeals from an in rem tax foreclosure judgment based upon the taxpayer's failure to pay municipal real estate taxes assessed on commercial property in Newark from 1983 to date. Located on the real estate is a warehouse which had been contaminated by a toxic spill occasioned by a tenant's storage of materials and an ensuing fire. Since the date of the fire, the Department of Environmental Protection (DEP) has, with some participation by the City of Newark, supervised a publicly funded cleanup of the facility under various court orders. The fire occurred April 11, 1983; the DEP action commenced June *12 18, 1983 and as of June 7, 1984 DEP was by court order in another action given "the exclusive possession and control of the facility" for the purpose of the cleanup. Although it was initially envisioned that the completion of the cleanup process would take only a few months, it was not until December 23, 1986 that DEP indicated that the cleanup process had been completed. The property was not restored to the owner until the signing of an order on May 8, 1987. In the interim, on December 8, 1983 a tax sale certificate reflecting arrearages in the amount of $62,677.89 was sold to plaintiff. The taxpayer entered into an installment agreement with the City on July 24, 1984 contemplating the payment of the lien over a three-year period; however, only six payments were made and plaintiff thereupon instituted foreclosure proceedings pursuant to the In Rem Tax Foreclosure Act, N.J.S.A. 54:5-104.29 et seq., including claims for all taxes, interest and penalties through the first quarter of 1987. The total amount thus claimed is $276,321.15.
Judge Margolis in the Chancery Division found as a fact that DEP had been in exclusive control of the premises since approximately April 11, 1983, but that the City, with the exception of its activity in initially fighting the fire and accomplishing periodic inspections, was never in control of the premises. Judge Margolis further found no unconstitutional taking of the property without compensation by the City, and that the State's cleanup of the contaminated property pursuant to the Spill Compensation and Control Act (Spill Fund), N.J.S.A. 58:10-23.11 et seq., did not constitute a compensable taking. Further, the judge found that the State had the right to impose a first lien on the property for the cost of its cleanup.[1]
Defendant asserts that since it was deprived of all possessory rights to the property there should have been a tolling of *13 municipal real estate taxes during the period of the State's possession. In support of its claim the taxpayer cites N.J.S.A. 58:10-23.11g(a)(4) which provides that the Spill Fund may be liable for up to one year of State or municipal tax revenue lost as a result of damage to property from hazardous waste discharge. We agree with Judge Margolis that the fact that a state or local government could make a claim against the Spill Fund for a loss of tax revenue does not imply that there is an automatic abatement of taxes during DEP's cleanup of the site. In fact the immediately preceding section, N.J.S.A. 58:10-23.11g(a)(3), implies to the contrary. That section permits a claim against the Spill Fund for the
[l]oss of income or impairment of earning capacity due to damage to real or personal property ... destroyed or damaged by a discharge....
If, due to the discharge, the taxpayer lost rental income and is not itself responsible to reimburse the Spill Fund, it could apply for reimbursement for the loss of such income. In the case of rental property such income would have had factored into it an amount necessary to defray municipal taxes. If the taxes were automatically abated, there would be double recovery.
The taxpayer here, however, is faced with another and more difficult problem. Subsection (c) of N.J.S.A. 58:10-23.11g provides that a person who has either discharged a hazardous substance or "is in any way responsible for any hazardous substance which the department has removed or is removing" is strictly liable without regard to fault for the cleanup and removal costs. As noted in Tree Realty, Inc. v. Dept. of Treasury, 205 N.J. Super. 346, 347-349 (App.Div. 1985), an owner of property may be held responsible on that basis alone for a discharge created by its lessee and may be ineligible to recover cleanup costs from the Spill Fund. Therefore only if the taxpayer, here, is free from such responsibility would it be able to claim its lost income under subsection (a)(3) just discussed. But this is a matter collateral to this foreclosure action and need not be resolved by us.
*14 The taxpayer further claims that the tax recovery subsection (4) would be meaningless if taxes were not automatically abated during the period of DEP's exclusive possession. We disagree. The loss of tax revenue could be occasioned by physical damage to property of an innocent third party, justifying a reassessment or tax appeal to lower the assessment. The municipality's resultant loss would then constitute a proper claim under this section. We note that another part of this court has determined in Inmar Associates v. Carlstadt, 214 N.J. Super. 256, 265 (App.Div. 1986), certif. granted 108 N.J. 221 (1987), that the fact of contamination rendering the property unusable would not occasion an immediate reassessment or be a basis for a tax appeal. But the damage could be more than mere contamination, and a tax appeal could thus be justified. The taxpayer asks us to go beyond Inmar Associates, and asserts that the case did not treat the situation where, as here, a court order deprived the taxpayer of all possessory rights during the cleanup period. We need not, however, reach this issue since the taxpayer never attempted to have the property reassessed nor did it take a tax appeal during the nearly three years that it was barred from possession.
This was all recognized by Judge Margolis when he rendered his decision. As Judge Margolis noted, the appropriate way for defendant to have sought tax relief was to seek a reassessment under N.J.S.A. 54:4-35.1. While we in no way determine that such application for reassessment would have been successful, see Inmar Associates v. Carlstadt, supra, defendant's failure to make this application precludes any defense on this basis in this foreclosure proceeding.[2]
*15 The judgment of foreclosure is affirmed substantially for the reasons expressed by Judge Margolis on March 27, 1987 in his extensive and comprehensive opinion in the Chancery Division.
NOTES
[1] This lien is for $3,660,239, and is the subject of the other litigation. Defendant contends that it is not responsible for this bill, but rather is a victim of the spill and thus its property should not be subjected to a lien for the cleanup costs.
[2] We understand defendant's dilemma, since it must choose whether to pay the real estate taxes to retain property which is subject to a lien perhaps greater than its value and then attempt to recover the costs from the actual polluter or to establish in separate proceedings that defendant was not responsible for the cleanup costs. In the alternative, defendant could let the asset go for taxes and still possibly be liable for the amount of the lien. This, however, is the result of the stringent provision of N.J.S.A. 58:10-23.11f(f) which establishes the Spill Fund lien as

a first priority claim and lien paramount to all other claims and liens upon the revenues and all real and personal property of the discharger, whether or not the discharger is insolvent.